### 7304

#### TOWLES & ARNETT v. ATLANTIC COAST LINE R. R. CO.

SPECIAL DAMAGES can not be recovered in an action *ex contractu* unless the defendant had notice of the circumstances out of which they might reasonably be expected to result at the time the parties entered into the contract.

*Bourland* v. *Ry.*, 3 L. R. A. (N. S.), 1111, *criticised.*

Before PRINCE, J., Colleton, Fall term, 1908. Reversed.

Action by Towles & Arnett against Atlantic Coast Line Railroad Company. From judgment for plaintiffs, defend-ant appeals.

*Messrs. Mordecai & Gadsden, W. Huger FitzSimons* and *Jas. E. Peurifoy,* for appellant. *Mr. Peurifoy* cites: 81 S. C., 536; 71 S. C., 211; 73 S. C., 264; 75 S. C., 351; 76 S. C., 338; 77 S. C., 185; 40 S. C., 528; 72 S. C., 293, 116.

*Messrs. Padgett & Lemacks* and *Howell & Gruber,* contra. *Messrs. Padgett & Lemacks* cite: 74 S. C., 287; 76 S. C., 241; 70 S. C., 19; 53 L. R. A., 90; 1 S. E., 261; 79 S. C., 156. *Subsequent notice:* 51 Mo. App., 665; 24 S. W., 353; 76 S. C., 342; 79 S. C., 156.

October 7, 1909. The opinion of the Court was delivered by

Mr. Justice Gary. The question presented by the exceptions is, whether his Honor, the presiding Judge, erred in ruling that even if the defendant, at the time of the contract, did not have notice of circumstances from which it might reasonably be expected that special damages would result, nevertheless the defendant would be liable for special damages, if such notice was given subsequently, and after the expiration of a reasonable time, for delivering the goods.

The general rule is, that special damages are not recoverable for the loss of goods, unless notice of the special circumstances is given at the time of shipment. *Kolb* v. *Ry.,* 81 S. C., 536, 62 S. E., 872.

The question under consideration arose in the cases of *McKerall* v. *Ry.,* 76 S. C., 338, 56 S. E., 965; *Matheson* v. *Ry.,* 79 S. C., 157, 60 S. E., 457; and *Kolb* v. *Ry.,* 81 S. C., 536, 62 S. E., 872; but was not decided, as the Court did not deem it necessary.

The question also arose, in the case of *McMeekin* v. *Ry.,* 82 S. C., 468; but, again, it was not decided, as there was no evidence of negligence on the part of the railroad company, subsequent to the time when it received the notice, as to special damages.

It is, therefore, still an open question in this State.

The rule is well settled that notice, at the time of the contract, of circumstances from which special damages may reasonably be expected to result, will make the defendant liable for such damages, on the ground that they were within

the contemplation of the parties, and, therefore, are regarded as forming a part of the contract.

Special damages can not be recovered in an action *ex contractu,* unless the defendant had notice of the circumstances from which they might reasonably be expected to result, at the time the parties entered into the contract, as the effect of allowing such damages would be to add to the terms of the contract another element of damages not contemplated by the parties. And when the plaintiff waives the right to sue upon the contract, and brings an action *ex delicto,* special damages, for a similar reason, are not recoverable.

When parties enter into a contract, and there is a breach thereof, for which an action may be brought either *ex contractu* or *ex delicto,* the plaintiff must elect whether to sue upon the contract or for the tort, as he can only resort to one of said actions. But he can not, by adopting a particular form of action, change the rights of the parties under the contract.

The case of *Bourland* v. *Ry.* (Tex.), 3 L. R. A. (N. S.), 1111, 1114, may be regarded as the leading case, sustaining the principle that such damages are recoverable, although notice of the special circumstances was not given to the carrier at the time of, but after the parties had entered into, the contract of shipment, and after the goods had reached their destination.

After discussing the rule announced in *Hadley* v. *Baxendale,* 9 Exch., 341, and other cases, the Court assigned the following reasons for its conclusion:

"The notice relied on in such cases, subsequent to the contract, appears to have been given at a time when its effect, if held sufficient, would have been to impose an additional liability, resulting from the contract itself, to that within the contemplation of the parties when they made it. In none of them were the facts like those in the present case, in which the contract to carry to Washita had been fully performed, and the property was at the point of destination,

and could have been delivered, when the notice was given. All that remained to be done was to make delivery, and this was in the power of the carrier to do at once. * * * No extra or unusual preparations were necessary for delivery; or, if they were, the defendant was at the time in as good a position to make them as it would have been had the notice been given when the contract was made. * * * In such a case knowledge of these facts, when the contract of transportation was made, appears to us to be unessential. None of the reasons exist for which such notice has been required in other cases. The plaintiff's loss did not arise from delay in transportation, nor from any cause for the prevention of which notice at the time of the contract was important, but from the failure to perform the simple duty to deliver the property, due to the faithlessness of the defendant's agent, at the time when the probable consequences thereof were fully disclosed. * * * The rule requiring notice at the time of the contract could not, with any justice, be made to fit the facts of this case."

These reasons are not convincing to us, as they are based upon the hypothesis that the contract was fully performed at the time the notice was given.

The effect of that decision was to add an element of damages to the terms of the contract, which was not within the contemplation of the parties when they entered into it.

If the defendant in that case refused to deliver the goods, after they reached their destination, in wilful or wanton violation of plaintiff's rights, then the plaintiff should have claimed punitive but not special damages.

Even, however, if we were inclined to adopt the rule, stated in said case, the facts in the case under consideration do not come within its principle, as the goods were lost in transportation, and failed to reach their destination.

The respondents contend that the judgment of the Circuit Court should be affirmed, on the ground that the description of the property in the bill of lading as "truck barrels," and

other testimony, showed that the defendant had notice of the special circumstances at the time the goods were shipped.

Conceding this to be the fact, the jury, under the following charge of the presiding Judge, did not have the right to consider such testimony: "I charge you that there is no evidence in this case that the defendant company had notice at the time of the shipment that there would result special damages to the plaintiff in the case of the delay in the shipment. I, therefore, sustain the contention of the defendant company, and instruct you that you can not find any special damages growing out of notice originally had by the company at the time of shipment."

The rule requiring the jury to render its verdict in accordance with the charge of the presiding Judge is thus stated in *Dent* v. *Bryce,* 16 S. C., 1. "It needs no authority, then, to say that the jury is bound to take the law from the Court. This principle applies in every class of cases except one, not necessary now to be considered. And, when the law is announced by the Court, it is the law of the case, until overruled by a higher authority. It follows, then, that a verdict in direct conflict with the law of the Court is a verdict against the law, and will, in all cases, be vacated in the first instance, either *sua sponte* by the Judge, or on motion of the aggrieved party. Any other doctrine would lead to the utmost confusion. If the jury could question the charge of the Judge, the result would be that in every case the whole case, both law and facts, would go to the jury, under the hope that, whatever might be the charge of the Judge at the time, he could be satisfied afterwards that he was not in error. This could not be tolerated. It would degrade the judiciary and unhinge the whole system."

It is the judgment of this Court that the judgment of the Circuit Court be reversed and the case remanded for a new trial.